UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| TAYA GOODICK, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | Civil Action No. 23-cv-12058-ADB |
| | * | |
| MARTIN O'MALLEY, | * | |
| Commissioner of the Social Security | * | |
| Administration, | * | |
| | * | |
| Defendant. | * | |

## **MEMORANDUM AND ORDER**

BURROUGHS, D.J.

Plaintiff Taya Goodick ("Plaintiff") brings this action pursuant to § 405(g) of the Social

Security Act, 42 U.S.C. § 405(g), challenging the final decision of the Commissioner of the

Social Security Administration (the "Commissioner") denying her claim for Title II Disability

Insurance Benefits ("DIB").  Currently pending are Plaintiff's motion to reverse the

administrative law judge's ("ALJ") January 3, 2023 decision, [ECF No. 14], and the

Commissioner's cross-motion to affirm the ALJ's decision denying benefits, [ECF No. 16].  For

the reasons set forth below, Plaintiff's motion is **DENIED**, and the Commissioner's motion is

**GRANTED**.

# I.    BACKGROUND

## A.    Statutory and Regulatory Framework:  Five-Step Process to Evaluate Disability Claims

"The Social Security Administration is the federal agency charged with administering both the Social Security disability benefits program, which provides disability insurance for covered workers, and the Supplemental Security Income program, which provides assistance for the indigent aged and disabled."  *Seavey v. Barnhart*, 276 F.3d 1, 5 (1st Cir. 2001) (citing 42 U.S.C. §§ 423, 1381a).

The Social Security Act (or the "Act") provides that an individual shall be considered to be "disabled" if he or she is:

> unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death[,] or which has lasted or can be expected to last for a continuous period of not less than twelve months.

42 U.S.C. § 1382c(a)(3)(A); *see also* 42 U.S.C. § 423(d)(1)(A).  The disability must be severe, such that the claimant is unable to do his or her previous work or any other substantial gainful activity that exists in the national economy.  *See* 42 U.S.C. § 1382c(a)(3)(B); 20 C.F.R. § 416.905.

When evaluating a disability claim under the Act, the Commissioner uses a five-step process, which the First Circuit has explained as follows:

> All five steps are not applied to every applicant, as the determination may be concluded at any step along the process.  The steps are: 1) if the applicant is engaged in substantial gainful work activity, the application is denied; 2) if the applicant does not have, or has not had within the relevant time period, a severe impairment or combination of impairments, the application is denied; 3) if the impairment meets the conditions for one of the "listed" impairments in the Social Security regulations, then the application is granted; 4) if the applicant's "residual functional capacity" [RFC] is such that he or she can still perform past relevant work, then the

application is denied; 5) if the applicant, given his or her [RFC], education, work experience, and age, is unable to do any other work, the application is granted.

*Seavey*, 276 F.3d at 5 (citing 20 C.F.R. § 416.920).

Plaintiff has the burden of proof through Step Four of the analysis, including the burden to demonstrate RFC. *See Flaherty v. Astrue*, No. 11-cv-11156, 2013 WL 4784419, at *8–9 (D. Mass. Sept. 5, 2013). At Step Five, the Acting Commissioner has the burden of showing the existence of jobs in the national economy that Plaintiff can perform notwithstanding his restrictions and limitations. *Goodermote v. Sec'y of Health & Human Servs.*, 690 F.2d 5, 7 (1st Cir. 1982).

**B.    Procedural Background**

On April 28, 2021, Plaintiff applied for DIB benefits, asserting an October 20, 2020 onset date. Tr. 208–09.[1] The Social Security Administration ("SSA") denied Plaintiff's application initially on October 26, 2021, and, on reconsideration, on May 24, 2022. *Id.* at 74–100. Plaintiff subsequently requested a hearing, which ALJ John Benson, held on October 28, 2022. *Id.* at 42–73. In a January 3, 2023 written decision, the ALJ found Plaintiff not disabled. *Id.* at 21, 32. The Appeals Council denied Plaintiff's request for review of the ALJ's decision on June 21, 2023. *Id.* at 1–7. Having exhausted her administrative remedies, Plaintiff filed the instant Complaint with this Court on September 6, 2023, seeking review of the Commissioner's final decision pursuant to section 405(g). ECF No. 1.

---

[1] References to pages in the Administrative Record, which was filed electronically at ECF No. 8, are cited as "Tr. ___."

### C.    Factual Background

Plaintiff was fifty years-old at the time of her alleged October 2020 onset date.  Tr. 208.

She has a limited eighth grade education, and previously worked for ten years from 2010–2020

as a receptionist at a medical office.  *Id.* at 235–36.

### D.    Relevant Medical Evidence

Plaintiff severely fractured her right ankle in 1997, for which she underwent an open

reduction and internal fixation ("ORIF") surgery.  Tr. 419.  She subsequently suffered a

compression fracture to a lumbar vertebra in 2000.  *Id.* at 419, 661.  Since the initial injuries,

Plaintiff has suffered from polyarthritis and pain in her hands, elbows, arms, and legs, among

other conditions.  *Id.* at 423.

In September 2021 and May 2022 medical opinions, non-examining state agency

physicians, Drs. Leah Doret ("Dr. Doret") and Ilia Coka ("Dr. Coka"), diagnosed Plaintiff with

"osteoarthritis and allied disorders," lupus, hypothyroidism, and chronic obstructive pulmonary

disease ("COPD"), and opined that Plaintiff was capable of a modified range of light work. [2]  Tr.

30, 77–79, 85–87.  In so opining, they both found that Plaintiff was limited to occasionally lifting

and/or carrying twenty pounds, and to frequently lifting and/or carrying ten pounds.  *Id.* at 77,

86.  They also found that Plaintiff was limited to standing and/or walking for a total of four hours

---

[2] What were previously considered "opinions" from state agency medical and psychological consultants were relabeled in 2017 as "prior administrative medical findings."  20 C.F.R. § 416.913(a)(5); *see also Revisions to Rules*, 2016 WL 4702272, 81 Fed. Reg. 62560-01, at 62564 (Sept. 9, 2016).  For clarity, because "prior administrative medical findings" continue to be treated the same as other medical opinions, the Court will refer to the "prior administrative medical findings" as "opinions" throughout this Order.  *See* 20 C.F.R. §§ 416.920c, 404.1520c (considering "prior administrative medical findings" in the same manner and using the same factors as "medical opinions"); *see also* 81 Fed. Reg. 62560-01, at 62564 ("We would consider and articulate our consideration of prior administrative medical findings using the same factors we use to consider medical opinions from medical sources.").

per day, and that she was able to sit for approximately six hours in an eight-hour workday.  *Id.* at 77, 86.  In support of the opined limitations, Dr. Doret cited to severe degenerative changes to Plaintiff's right ankle, her "chronic" musculoskeletal pain, and her "advanced" knee osteoarthritis.  *Id.* at 77–78.  Dr. Coka similarly noted Plaintiff's generalized musculoskeletal pain, history of right ankle ORIF in 1997, L1 fracture in 2000 managed nonsurgically, osteoporosis, degenerative changes in her right ankle mortise and both hands, mild bilateral sacroiliitis, and chronic ankle edema.  *Id.* at 87.

In the only other medical opinion available to the ALJ, examining physician, Dr. Yacov Kogan (Dr. Kogan), examined Plaintiff in May 2022, reviewed medical records, and diagnosed hypothyroidism, COPD, generalized musculoskeletal pain, status post right ankle surgery, L1 vertebral fracture managed nonsurgically, osteoporosis, severe degenerative changes at the ankle mortise and extensive soft tissue edema, degenerative changes to hands, mild bilateral sacroiliitis with mild periarticular sclerosis, and chronic bilateral ankle edema.  Tr. 304–05; *see also id.* at 30–31 (discussing existing medical opinions).  Dr. Kogan, however, found that due to differences between Plaintiff's formal examination presentation and "the much better level of function observed outside of [a] formal exam[ination] setting," Plaintiff's "work limitations [were] difficult to predict."  *Id.* at 305.

### E.    ALJ's Decision

On August 17, 2022, the ALJ issued a decision finding that Plaintiff was not disabled under the Act.  Tr. 21, 32.  Applying the five-step sequential evaluation process for determining whether an individual is disabled, at step one, the ALJ determined that Plaintiff had not engaged

in substantial gainful activity from her October 20, 2020, alleged onset date, through the date of the ALJ's decision.[3]  *Id.* at 24.

At step two, the ALJ determined that Plaintiff suffered from the following severe impairments:  degenerative disc disease, osteoarthritis, degenerative joint disease of the knees, status post right ankle surgery, and COPD.  Tr. 24.

At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of a listed impairment, specifically considering Listings 1.15 (disorders of the skeletal spine), 1.18 (abnormality of a major joint), and 3.02 (chronic pulmonary insufficiency).  Tr. 25-26.

At step four, the ALJ found that Plaintiff possessed an RFC for sedentary work with several additional limitations.  Tr. 26.  First, the ALJ specified that Plaintiff "requires a handheld assistive device in one hand for ambulation."  *Id.*  Second, the ALJ found that Plaintiff could stand and/or walk for only "[thirty] minutes at one time before needing to sit for up to [three] minutes before returning to the standing and/or walking positions."  *Id.*  Third, the ALJ found that, in terms of postural limitations, Plaintiff could "occasionally climb stairs; never climb ladders; occasionally balance, stoop, and crouch; never kneel or crawl; occasionally reach overhead; frequently reach at and below shoulder height; [and] frequently handle and finger."  *Id.*  Finally, the ALJ added several environmental limitations, including that Plaintiff "avoid concentrated exposure to vibrations, extreme cold or heat, and atmospheric conditions" and that

---

[3] Plaintiff's date last insured ("DLI"), December 31, 2025, post-dated the ALJ's decision; thus, the relevant period for purposes of Plaintiff's DIB claim was from October 20, 2022, through August 17, 2022.  *See* Tr. 24.

she "have no exposure to workplace hazards such as unprotected heights and dangerous moving machinery." *Id.*

Subsequently, relying on the testimony of a vocational expert ("VE"), the ALJ determined that Plaintiff was able to perform her past relevant work as a receptionist, and thus ultimately concluded that Plaintiff was not disabled at step four.  Tr. 31.

## II.    STANDARD OF REVIEW

Under sentence four, this Court's review of the Commissioner's decision is "limited to determining whether the ALJ used the proper legal standards and found facts upon the proper quantum of evidence."  *Ward v. Comm'r of Soc. Sec.,* 211 F.3d 652, 655 (1st Cir. 2000); *accord Sacilowski v. Saul*, 959 F.3d 431, 437 (1st Cir. 2020) (citation omitted) (holding the court reviews "whether the final decision is supported by substantial evidence and whether the correct legal standard was used").  The Court must defer to the Commissioner's factual findings, so long as such findings are "supported by substantial evidence," but the Court's review of the Commissioner's conclusions of law is *de novo*.  *See Sacilowski*, 959 F.3d at 437; *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999).

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations."  *Biestek v. Berryhill*, 587 U.S. 97, 102–03 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  Substantial evidence is "more than a mere scintilla" and "means — and means only — such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.*; *see also Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).  The court will affirm the ALJ's findings, even if the record could support a different conclusion, when there is substantial evidence to support the ALJ's

findings. *See Ortiz v. Sec'y of Health & Human Servs.*, 955 F.2d 765, 769 (1st Cir. 1991) (internal quotation marks omitted); *accord Purdy v. Berryhill*, 887 F.3d 7, 13 (1st Cir. 2018).

A denial of benefits, however, will not be upheld if "the [Commissioner] has committed a legal or factual error in evaluating a particular claim." *See Manso–Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996) (quoting *Sullivan v. Hudson*, 490 U.S. 877, 885 (1989)). In particular, an ALJ's findings are not conclusive "'when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts.'" *Sacilowski*, 959 F.3d at 437 (quoting *Nguyen v. Chater*, 172 F.3d at 35). Accordingly, if an "ALJ fail[s] to record consideration of an important piece of evidence that supports [the claimant's] claim and, thereby, le[aves] unresolved conflicts in the evidence, [the] Court cannot conclude that there is substantial evidence in the record to support the Commissioner's decision." *Nguyen v. Callahan*, 997 F. Supp. 179, 183 (D. Mass. 1998); *see also Crosby v. Heckler*, 638 F. Supp. 383, 385–86 (D. Mass. 1985) ("Failure to provide an adequate basis for the reviewing court to determine whether the administrative decision is based on substantial evidence requires a remand to the ALJ for further explanation.").

## III.    DISCUSSION

Plaintiff argues the ALJ's decision should be reversed because the ALJ's assessed RFC is internally inconsistent, and because the ALJ's VE hypothetical was inaccurate and/or incomplete.[4] *See* ECF No. 14. The Commissioner argues the ALJ's decision is free of harmful legal error, supported by substantial evidence, and should be affirmed. *See* ECF No. 17.

---

[4] At the outset, the Court notes that Plaintiff has not challenged on appeal the ALJ's evaluation of her testimony and/or the medical opinion evidence. *See* ECF No. 14. Instead, Plaintiff simply

As noted, the ALJ assessed Plaintiff with a sedentary RFC along with additional limitations, including the limitation that Plaintiff could stand and/or walk for only "[thirty] minutes at one time before needing to sit for up to [three] minutes before returning to the standing and/or walking position."  Tr. 26.  The parties here agree, and accurately note, that a sedentary exertion level is limited to only "occasional[]" standing and/or walking, and that "occasionally" refers to occurring from "very little up to one-third of the time," and would "generally total no more than about two hours in an 8-hour workday."  ECF No. 17 at 8 (quoting Social Security Ruling ("SSR") 96-6p, *Policy Interpretation Ruling Titles II and XVI: Determining Capability to Do Other Work – Implications of a Residual Functional Capacity for Less than a Full Range of Sedentary Work*, 1996 WL 374185, at *3 (July 2, 1996), and 20 C.F.R. § 404.1567); ECF No. 14. at 9 (citing SSR 96-6p, 1996 WL 374185, at *3).[5]

It is the interpretation of the ALJ's assessed RFC upon which the parties disagree.  ECF No. 17 at 9; ECF No. 14. at 9–10.  Plaintiff argues that the ALJ's additional limitation regarding her need to sit after standing and/or walking for thirty minutes, as articulated, in essence, nullified the general standing and walking limitations associated with the sedentary designation. ECF No. 14. at 9.  As such, she contends that the RFC, as written, could be interpreted to expand her ability to stand and/or walk beyond the "occasional[]" two hours typically permitted by the baseline sedentary exertional level specified by the ALJ, to include "stand[ing] and walk[ing] for

---

argues that the ALJ's assessed RFC is confusing and inconsistent, and that the VE hypothetical was inaccurate and incomplete.  *Id.* at 8–13.

[5] SSRs are binding on all Social Security Administration personnel, including state agency adjudicators, administrative law judges, and the Appeals Council.  *See McDonald v. Sec'y of Health & Hum. Servs.*, 795 F.2d 1118, 1125 (1st Cir. 1986).

nearly 7.25 hours during the workday," while "only sit[ting] for [forty-eight] minutes during the workday." *Id.* at 9. Plaintiff argues that this RFC interpretation undermines "the totality of the evidence," which supported limiting her to the restrictions associated with sedentary work, i.e., standing and/or walking a maximum of two hours per day. *Id.* at 10.

The Commissioner does not disagree that Plaintiff was limited to sedentary work, and, in fact, contends that was precisely what the ALJ's RFC provided. ECF No. 17 at 9. The Commissioner asserts that, contrary to Plaintiff's interpretation, the ALJ's additional "thirty-minutes at one time" limitation did not supplant or nullify the general sedentary limitations, but instead further restricted Plaintiff's standing and walking limitations beyond those generally allowed at a sedentary exertion level. *Id.* In other words, the Commissioner contends that the ALJ's RFC both limited Plaintiff to an overarching cap of approximately two hours of standing/walking in an eight-hour workday, as permitted by the sedentary exertional level designation, *and* added the additional requirement that Plaintiff be permitted to sit for three minutes after thirty minutes of standing and/or walking at one time. *Id.*

The Court agrees with the Commissioner's interpretation of the ALJ's RFC based on its review of the ALJ's decision, the relevant record evidence, and the hearing transcript. *See* Tr. 21–32, 64–66. First, the ALJ's evaluation of the medical opinion evidence supports the Commissioner's interpretation of the ALJ's assessed RFC. *See id.* at 30–31. Notably, the ALJ found "mostly persuasive" Drs. Doret's and Coka's medical opinions from September 2021, and May 2022, respectively, in which they each opined that Plaintiff was capable of light work. *Id.* at 30–31; *see also id.* at 77–79, 85–87. The ALJ nevertheless adopted an even more restrictive RFC than those set forth in Drs. Doret's and Coka's medical opinions, expressly finding that, based on the medical evidence and Plaintiff's testimony, an additional "restriction to the

sedentary exertion, *including standing and walking for [thirty]-minute tolerances*" was warranted.[6]  *Id.* at 30–31 (emphasis added); *see also id.* at 77–79, 85–87.  In so doing, the ALJ provided an adequate explanation regarding the relationship between the assessed sedentary exertion level and the additional limitation.  *Id.* at 31.

Second, review of the hearing transcripts — specifically, the ALJ's VE hypotheticals — further confirms the accuracy of the Commissioner's interpretation of the ALJ's assessed RFC limitations.  Tr. 64–66.  The ALJ posed several hypotheticals to the VE, including one with a "light work" designation and two with a "sedentary" work designation.[7]  *Id.*  All three hypotheticals included the additional restriction limiting Plaintiff to standing and/or walking for only thirty minutes "at one time" before needing to sit for three minutes within the "overall cap" associated with the hypothetical's exertional level designation.  *See id.* at 64–65 (noting that the additional limitation was "with an overall cap of standing and walking").  One of those hypotheticals, in fact, mirrored the RFC ultimately adopted by the ALJ – limiting Plaintiff to sedentary work with the use of "a handheld assistive device in one hand for ambulation[,]" and

_____

[6] As noted above, Dr. Kogan declined to provide an opinion regarding Plaintiff's physical functioning limitations.  *See* Tr. 304–05.  The ALJ agreed with Dr. Kogan's observation that Plaintiff appeared to demonstrate greater physical functioning outside of formal examinations.  *Id.* at 31.  He found Dr. Kogan's opinion "somewhat persuasive," but, unlike Dr. Kogan, the ALJ found "sufficient evidence" to assess Plaintiff's functional limitations.  *Id.*

[7] "Sedentary" work, as noted, requires lifting no more than ten pounds at a time, sitting for at least six hours out of an eight-hour workday, occasional walking and standing for no more than about two hours per day, and good use of the hands and fingers for repetitive hand-finger actions.  *See* 20 C.F.R. 404.1567(a); SSR 96–6p, 1996 WL 374185, at *3.  By contrast, a job in the "light work" category "requires a good deal of walking or standing – the primary difference between sedentary and most light jobs."  SSR 83–10, *Titles II & XVI: Determining Capability to Do Other Work*, 1983 WL 31251, at *6 (Jan. 1, 1983).  A "full range of light work requires standing or walking, off and on, for a total of approximately [six] hours of an [eight]-hour workday," and "[s]itting may occur intermittently during the remaining time."  *Id.*

assuming that the originally-posed additional "limitations would remain the same." *Id.* at 65. After considering that hypothetical, the VE responded that Plaintiff would be able to perform her past work with such limitations at the sedentary level. *Id.*

Based on the above, the Court finds that the ALJ's assessed RFC and related VE hypotheticals were supported by substantial evidence.

The Court further finds that the ALJ applied the correct legal standards and did not err as a matter of law in assessing Plaintiff's RFC and in posing the hypotheticals to the VE. The ALJ's hypotheticals to the VE adequately captured Plaintiff's standing and walking limitations, based on the ALJ's unchallenged evaluation of the relevant medical evidence and Plaintiff's testimony. *See Arocho v. Sec.'y of Health and Human Servs.*, 670 F.2d 374, 375 (1st Cir. 1982) ("[I]n order for a vocational expert's answer to a hypothetical question to be relevant, the inputs into that hypothetical must correspond to conclusions that are supported by the outputs from the medical authorities."). Additionally, for the reasons described above, the hypotheticals were consistent with the ALJ's assessed RFC.

Moreover, the ALJ's assessed RFC was internally consistent and, like the VE hypothetical, adequately accounted for Plaintiff's functional limitations, as determined by the ALJ's unchallenged evaluation of the medical evidence and testimony. *See Kolek v. Colvin*, No. 13-cv-30156, 2014 WL 6893554, at *2 (D. Mass. Dec. 5, 2014) (holding ALJ's VE hypothetical was not inconsistent with RFC assessment simply because the "wording of the hypothetical was not identical to the language in the RFC," and that, even it were construed as inconsistent, the error was harmless because "any correction in this minor inconsistency in the [VE] hypothetical" would have the same result). The cases cited by Plaintiff are not to the contrary. *See* ECF No. 14. at 8. In particular, the First Circuit case cited by Plaintiff for the proposition that remand is

required where an assessed RFC is "internally inconsistent," is factually distinguishable.  *See id.* (citing *Rivera-Figueroa v. Sec'y of Health & Hum. Servs.*, 858 F.2d 48 (1st Cir. 1988)).  In *Rivera-Figueroa*, the Court held that the ALJ failed to adequately account for Plaintiff's dizziness in assessing her RFC.  *See* 858 F.2d at 52.  Here, by contrast, as discussed above, the ALJ did account for Plaintiff's standing and walking limitations in the assessed RFC by limiting her to sedentary work with the additional thirty-minute limitation on standing and/or walking.[8]

## IV.    CONCLUSION

For the reasons above, the Court finds that the ALJ applied the correct legal standards, and his decision was supported by substantial evidence.  Accordingly, Plaintiff's motion to remand, [ECF No. 14], is **<u>DENIED</u>**, and the Commissioner's cross-motion to affirm the ALJ's decision denying SSI benefits, [ECF No. 16] is **<u>GRANTED</u>**.

**SO ORDERED.**

December 4, 2024                                                                                        */s/ Allison D. Burroughs*
                                                                                                               ALLISON D. BURROUGHS
                                                                                                               U.S. DISTRICT JUDGE

---

[8] Nor is the out-of-circuit case relied on by Plaintiff relevant or helpful to resolution.  *See* ECF No. 14. at 8 (citing *Maxwell v. Comm'r of Soc. Sec.*, 778 F. App'x 800 (11th Cir. 2019)).  That case involved a determination as to whether an ALJ violated the rule of mandate based on the ALJ's alleged failure to clarify Plaintiff's RFC on remand.  *See Maxwell*, 778 F. App'x at 803. The Eleventh Circuit found no violation where the ALJ "engag[ed] in a lengthy discussion that decoupled the reasoning regarding [a] manipulation and reaching [limitation]."  *Id.*